William C. Miller, Plaintiff-Appellant, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellee.

**Gen. No. 49,962.**

December 28, 1966.

Robert L. Brody and George J. Gore, of Chicago (George J. Gore and Perry L. Weed, of counsel), for appellant.

William J. Lynch, William S. Allen, Jerome F. Dixon, and Charles F. White, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

The complaint alleges that plaintiff sustained injury on November 25, 1956, when he was assaulted by two men and pushed onto the tracks from defendant's subway platform at State and Monroe Streets, Chicago. It was also alleged, pursuant to plaintiff's theory of liability, that defendant knew or should have known that the platform was a dangerous place, because it had been the scene of previous assaults by vicious persons, thus imposing on defendant a duty to police its platform for the protection of persons such as plaintiff who were awaiting the arrival of defendant's trains. The alleged failure of

defendant to exercise ordinary care in fulfilling this duty is the basis of plaintiff's claim.

After selection of a jury, opening statements were made. The court then refused to hear evidence offered by plaintiff relating to previous assaults. It should be noted here that the whole question of an offer of proof is always dependent upon a preliminary ruling by the trial judge that he will not admit evidence which one of the parties is seeking to introduce. Without such a ruling, as in the instant case, neither the necessity nor opportunity for presentation of an offer of proof ever comes into existence. Then, when an offer of proof is made, the generalities become merged into the particulars of the specific evidence offered, and the judge is then in a position to determine the materiality and relevancy of whatever actual evidence may be available to the party to prove the point he seeks to establish.

In this case plaintiff had subpoenaed three police officers who were present and prepared to testify to previous occurrences. Plaintiff's attorney was thereupon required or given an opportunity to make an offer of proof in the form of a statement describing the testimony he proposed to elicit, a formal offer of proof having been waived by defendant. He stated for the record:

> The following offer of proof is being made with a waiver of formal proof by way of a witness taking the stand; [1] that if permitted to proceed . . . the

---

[1] In our opinion, it may happen more often than not that an informal offer of proof, as distinguished from a formal offer, through interrogation of witnesses, will cause more trouble than it will save. Too frequently a lawyer may, though in good faith, misstate or overstate what the testimony of his witnesses would be when actually sworn and submitted to specific questioning and cross-examination. From the point of view of a reviewing court, it would seem that the true purpose of an offer of proof is accomplished far better when the offer is presented formally.

plaintiff would produce (three police officers who were attached to the district wherein the occurrence complained of took place, at that time and prior thereto).

These officers would testify of their own knowledge that there were several complaints received over a period of time prior to 11/25/56 as to assaults, robberies and various crimes in and about the platforms in the area of the subway near Monroe and State Street.

Further, Captain E. J. Barry will testify that at that particular time he was the desk sergeant in the First District, and that prior thereto, on at least one occasion, it was necessary to detail a special task force of police to the downtown subway platforms, said special detail being drawn from the outlying area because of particular complaints in the nature previously described and one complaint in particular, by the secretary to the then Governor of the State of Illinois, Adlai Stevenson, who was assaulted in and about one of the platforms in the area.

Defendant objected to the offer of proof, the objection was sustained, and the offered proof was rejected. Rather than attempt to proceed further in this regard, plaintiff elected to stand on his offer of proof, and it was expressly so stated in the judgment order. Therefore, while plaintiff raises technical points concerning the way in which the case was handled by the trial judge, the essential issue before us is the correctness of the court's ruling on the particular offer of proof on which plaintiff rested his case.

■ It cannot be disputed that in this type of action it was open to the plaintiff—in fact, it was necessary for the plaintiff as part of his burden of proof—to show actual or constructive notice to defendant of the existence of a dangerous condition at its State-Monroe station plat-

379

form at the time of plaintiff's injury. Absent such knowledge, the alleged duty to police the platform at that location would not have been breached because it would not have arisen.

■■ As relating to the question of defendant's knowledge of prior disturbances which would raise a duty to police this particular station platform, the trial court was clearly in error in its broad preliminary ruling that no evidence of any prior occurrences would be admissible. If the matter had rested there, it might reasonably be argued that it would have been a useless or futile gesture for plaintiff to pursue the proposition further by urging upon the court an offer of proof through which he would make specific the point which up to that time had been stated only in generalities. For authority bearing on this exception to the general rule see, for example, Giddings v. Williams, 336 Ill 482, 168 NE 514, where the Supreme Court found that the attitude of the trial court had been so extremely hostile as to prevent plaintiffs in error from making an offer of proof and that they were therefore excused from doing so. See also Cleary, Handbook of Illinois Evidence, § 7.7, and ILP, Trial, § 44, and cases there cited to the same effect. The result in such a situation is that the ruling of the court, which would ordinarily not be reviewable without an offer of proof, does become so reviewable, and the absence of an offer of proof in such a circumstance is not permitted to work to the injury of the party who was prevented from following the customarily required procedure.

■ In the instant case, however, the matter did not rest there, and the attitude of the court obviously did not prevent plaintiff from making the offer of proof which he then proceeded to lay before the court. At the conclusion of the offer of proof, the court (as shown by the judgment order) took "the matter under advisement on offer of proof submitted by the plaintiff." After the

court had sustained defendant's objection to the offer of proof, "the Plaintiff standing on said offer," the court proceeded to enter judgment. On this record it appears to us clear that the judge's preliminary erroneous ruling became academic and of no importance whatsoever when the offer of proof was actually made by plaintiff and considered by the court. The issue which then arose, and is now presented for our decision, is whether or not the court was correct in sustaining defendant's objection to the offer of proof as made. And if the trial judge's ruling was correct, it is of no consequence that he may have stated a wrong reason therefor, which we think he did. Platz v. Walk, 3 Ill2d 313, 318, 121 NE2d 483; Murphy v. Lindahl, 24 Ill App2d 461, 468, 165 NE2d 340. Unlike an appellant, an appellee's argument in this court need not be confined to specific objections or points properly raised by him in the trial court. A judgment may be sustained by any argument and on any basis appearing in the record which demonstrates that the judgment was correct, even though such objection or argument had not been advanced at all in the trial court. Merriam v. McConnell, 31 Ill App2d 241, 244, 175 NE2d 293, citing, among other authorities, the leading case of Becker v. Billings, 304 Ill 190, 205, 136 NE 581.

We are therefore required to consider the sufficiency of the offer of proof (as set forth above) for the purpose of meeting plaintiff's burden to establish defendant's actual or constructive knowledge of a dangerous situation at the Monroe-State platform on November 25, 1956. In this consideration, however, it must be borne in mind that proof of just any prior acts of subway platform violence would not meet this burden. There must be proof of such acts which were proximately related to the attack on plaintiff as to both time and place. See, e. g., In re Estate of Kroening, 329 Ill App 178, 67 NE2d 293, and Romine v. City of Watseka, 341 Ill App 370, 375–376, 91 NE2d 76.

381

Plaintiff contends that his offered proof was sufficient, based upon the principles laid down in Neering v. Illinois Cent. R. Co., 383 Ill 366, 50 NE2d 497. There a suit was brought by a young woman to recover damages for injuries sustained as a result of being assaulted while she was waiting for a train at defendant's railroad station. Both plaintiff and her sister testified that for two years immediately prior to the assault, they had seen tramps and hoboes on, and in the immediate vicinity of, the station platform at least once a week, and that they had repeatedly complained to the ticket agent about this situation. Further, there was testimony by police officers that at times proximate to the assault, they had removed hoboes from the station in question. Plaintiff is correct when he contends that the Neering case stands for the proposition that liability will be imposed on a carrier which knowingly allows lawbreakers to have access to its premises. But the opinion in Neering demonstrates the fatal defect of plaintiff's case. The evidence submitted to prove knowledge in the Neering case was specific and proximate as to both the time and the area involved. No question of materiality or relevancy of such evidence was left for the speculation of the trial judge or of a reviewing court. The holding in that case is consequently confined to a dangerous condition shown to have been proximate to the assault in question as to both time and place. Instead of furnishing authority for reversal, therefore, we consider that the Neering case constitutes a sound basis for affirmance. The offer of proof in the case before us is far too general to justify our sending the case back for trial. We can have no assurance that the specific occurrences about which the police officers might testify would be at all relevant to meet plaintiff's burden.

■ ■ We take notice of the fact that there is more than a mile of "downtown subway platforms" in Chicago, all of which might be said to be "in the area near" Mon-

roe and State Streets, but most of which would not be near enough to establish the proof required of plaintiff in this case. The only instance specifically referred to in the offer of proof [2] is that of the assault upon the secretary to the then Governor, Adlai Stevenson. From this part of the offer it appears only that there had been an assault sometime during the period of years 1949 through 1952 (i. e., during the Governor's term of office) at a subway platform which might have been anywhere in the downtown area—at Harrison and State Streets, for example. Thus, the only specific occurrence covered by the offer of proof could have taken place a half mile from the Monroe Street platform where the surroundings are very different, and was certain to have occurred 4 to 8 years prior to the instant assault. In regard to this specific offer, we consider it too remote in both time and place, and we consider the balance of the offer to be inadequate because too general and vague. Taken as a whole, the offer of proof is insufficient to establish the constructive notice necessary for plaintiff's prima facie case. An offer of proof serves no useful purpose at all if it does not demonstrate (to both trial and appellate courts) the admissibility of the testimony which was foreclosed by the ruling complained of. As stated by Professor Cleary in his Handbook of Illinois Evidence, § 7.7, "Just as the objection is the key to saving for review any error in admitting evidence, the offer of proof is the key to saving error in excluding evidence." And admissibility cannot be determined from descriptive generalities. The "offer must state specifically what it is

---

[2] And therefore probably the best one available to plaintiff, since his highly competent counsel would presumably be putting his best foot forward to convince the judge to change his preliminary ruling. A secondary feature of an offer of proof is the salutary one (similar in this regard to the function of a post-trial motion) of affording an opportunity to the trial court to correct its own errors.

proposed to show in order that the court may rule on its materiality and relevancy." ILP, Trial, § 44 and cases there cited. While defendant made only a general objection to the offer of proof, such an objection effectively raises the questions of materiality and relevancy. Johnson v. Bennett, 395 Ill 389, 398, 69 NE2d 899. Evidence of an assault removed in time or place from the instant occurrence would not be relevant to the critical issue of constructive notice.

■■■ After the trial court's decision on plaintiff's offer of proof, the attorneys entered into a stipulation and the judge then took the case from the jury and entered judgment for defendant. Plaintiff's final argument here is that this stipulation of counsel relieved him of making any more specific offer of proof than he did. Part of the stipulation, as stated orally to the court by plaintiff's attorney, was:

> It is agreed by and between the parties hereto that for the purpose of this proceeding only, the defendant waives formal proof of the other necessary allegations of the complaint, being, to wit: The occurrence as alleged on 11/24/56, due care and caution upon the part of the plaintiff, injuries as to proximate result of negligence, if any, on the part of the Chicago Transit Authority.

> . . . . . .

> May the record further show that this procedure is being made and taken in order to save three days of vital court time at the present time, inasmuch as the Court indicated to all concerned that it would not allow the proof from witnesses who are necessary in the proceedings.

The balance of the stipulation was set forth in a finding by the court in its judgment order as follows: .

. . . and the Court taking the matter under advisement on offer of proof, submitted by the plaintiff, formal proof being waived by stipulation and agreement, said offer of proof corresponding to and supporting the allegations of the Amended Complaint with reference to previous incidents of assaults, the veracity, credibility and *sufficiency* of the proof not being admitted by the defendant. . . . (Emphasis supplied.)

The question of the sufficiency of the proof offered was thus clearly in the minds of both court and counsel when the judgment order was entered. We therefore cannot reach the conclusion which plaintiff urges upon us in this regard. In our opinion, defendant did not stipulate away the controlling issue of the sufficiency of plaintiff's offer of proof, which issue we resolve adversely to the contentions of plaintiff.

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J., concurs.

McCORMICK, J., dissents.

I must respectfully dissent to the conclusion reached in the majority opinion.

The writer of this dissent agrees with the statement of facts set out in the opinion; however, in order to indicate the attitude of the trial judge from the very inception of the trial—even though no point is made on this question in the briefs filed in this court—it is proper for the court to consider the fact that the trial judge quashed a subpoena which had been served upon the defendant, requiring it to bring to court all the records and reports pertaining to assaults, strong-arm robberies, crimes of violence and complaints relative to the same,

on the subway platform at or near State, and Monroe Streets on or before November 25, 1956, and all records pertaining to assignment of security police to the same area during the same period.

After the opening statement had been made the trial court stated that it would not allow any evidence to be introduced at the trial concerning incidents or occurrences in the nature of assault, etc., occurring on or prior to November 25, 1956, on the subway platform at or near State and Monroe Streets. As pointed out in the majority opinion, "plaintiff had subpoenaed three police officers who were present and prepared to testify to such occurrences." There was some discussion between counsel, and the plaintiff—through his counsel—stated that he would make an offer of proof; it was agreed between the parties that the plaintiff would produce certain testimony, although the defendant did not admit or stipulate to its truth. Among other things contained in the stipulation as stated in the majority opinion was the following statement with reference to the three police officers who were present in court:

> "These officers would testify of their own knowledge that there were several complaints received over a period of time prior to 11/25/56 as to assaults, robberies and various crimes in and about the platforms in the area of the subway near Monroe and State Street."

There was an additional stipulation concerning the testimony of Captain Barry, as set out in the opinion. The defendant objected to the offer of proof; the objection was sustained, and the offered proof was rejected. In the opinion it is considered that the essential issue before this court is the correctness of the court's ruling on the offer of proof, and it is admitted that the trial court was in error in stating that it would not allow any testimony whatsoever on this subject.

The majority opinion takes the view that the offer of proof submitted by the plaintiff should have specifically indicated the times when the alleged assaults occurred on this platform, inasmuch as there must be some connection in time between them and the instant assault. The plaintiff argues that where the court has entered an order of this character he should not have been required to make any offer of specific proof. In that he is supported by the texts and the cases.

In 88 CJS, Trial, § 74, on page 180, it is stated:

> "An offer of proof is unnecessary where the offer would be a useless ceremony, or the evidence is rejected as a class, or where the court indicates such offer would be unavailing. . . ."

In 5 Am Jur2d, Appeal and Error, § 604, it is said:

> "The general rule that the trial court cannot be put in error in excluding evidence unless an offer of proof is made showing what the evidence or testimony would have been if received, has been applied to preclude review of alleged error in excluding evidence. However, the making of an offer of proof is not a condition of the right to a review of a ruling excluding evidence unless the nature of the evidence intended to be elicited by the challenged question is not apparent. And the actual offer of evidence upon an issue is not necessary to preserve the question for the appellate court if the trial court rules that no proof upon that issue will be received."

In 34 ILP, Trial, § 44, it is stated:

> ". . . Furthermore, an offer of proof is unnecessary where it is apparent that it would be a useless gesture by virtue of the attitude of the court."

Cleary, Handbook of Illinois Evidence, § 7.7, page 107, states:

> ". . . An extremely hostile attitude on the part of the trial judge excuses the making of an offer. Giddings v. Williams, 336 Ill 482, 168 NE 514 (1929)."

See Edmanson v. A. H. Andrews & Co., 35 Ill App 223. In Giddings v. Williams, 336 Ill 482, 168 NE 514, an objection was made to the conduct of the trial court, and the Supreme Court said it would not consider the contentions in detail, and added:

> "It is sufficient to say that it is apparent from statements made by the court that the case was tried upon the theory that any grounds for constructive eviction which might have existed were waived by plaintiffs in error, that they were not justified in vacating the premises, and the rulings on the admission of evidence were upon this theory. As a result, considerable competent evidence was excluded and plaintiffs in error did not have a fair and impartial trial. The Appellate Court held that these rulings did not constitute reversible error for the reason that plaintiffs in error did not make an offer as to what they expected to prove. From the whole record we are of the opinion that the attitude of the court was such as to prevent plaintiffs in error from making an offer when the various items of evidence were ruled upon. . . ."

In Bartholow v. Davies, 276 Ill 505, 114 NE 1017, in which case the court refused to permit a witness to answer as to whether or not in his opinion one Borden was sane or insane from 1900 until his death, the question was objected to as incompetent, irrelevant and immaterial,

" and thereupon the counsel for the appellants stated that he offered to prove that beginning with the year 1900, and until his death, Borden was insane, unable to understand the ordinary business transactions of life and was subject entirely to the will and domination of Mrs. Davies. The court sustained the objection, stating that he declined to receive this evidence, or any evidence of like character, on the ground that the decree of adoption of the county court could not be attacked in this collateral manner. This was a sufficient offer of proof. The question asked was not objected to on account of its form but for immateriality. It was not immaterial, for the insanity of the grantor in the deeds was an essential element of the appellant's case. The appellants could not prove their whole case by the testimony of one witness or the answer to one question, and when the court sustained an objection to a material question and announced that no evidence of that character would be received, it was not necessary for the appellants, in order to preserve their rights, to call all their witnesses and interrogate each one of them."

The court reversed and remanded the case.

In Carroll v. Beavers, 126 Cal App2d 828, 273 P2d 56, the trial court held that it was material and relevant to prove whether or not the respondent had failed to stop at a stop sign. In the opinion the court said:

". . . The trial court not only sustained an objection to the specific question on this point but had indicated that it would not admit any evidence as to any statements made by the respondent which were incorporated in or made the basis for the facts set forth in the report. It is well settled 'that no offer of proof is required when an entire class of evidence

389

is excluded where the relevancy of such class of evidence is apparent.' [Citing cases.]"

In Hartnett v. Boston Store of Chicago, 265 Ill 331, 106 NE 837, a suit was brought against the defendant to recover damages alleged to have resulted from the violation of an ordinance of the City of Chicago forbidding the sale of firearms to minors, and alleged that the defendant sold a gun and cartridges to one Soderquist, a minor; that Soderquist fired the gun and the plaintiff was struck by the bullet. On the trial Soderquist was a witness for the plaintiff and was asked a number of questions evidently designed to show that he had never owned a gun and was not accustomed to the use of firearms or experienced in that respect. Objections to the questions were sustained by the trial court. The Supreme Court in its opinion said:

> "Error is assigned on the ruling, and one reply is that the plaintiff made no offer of proof as to what the witness would answer. That does not justify the ruling, because where a question shows the purpose and materiality of evidence it is not necessary to state what the answer would be. If a question is in proper form and clearly admits of an answer relative to the issue and favorable to the party on whose side the witness is called, the party is not bound to state the facts proposed to be proved by the answer unless the court requires him to do so. (38 Cyc 1330; Buckstaff v. Russell, 151 US 626.)"

In Meaney v. United States, 112 F2d 538, a case brought to recover upon a policy of war risk insurance, the policy had lapsed and the question was whether or not the deceased had been permanently and totally disabled at that time. The policy lapsed on January 30, 1919; the insured died on July 6, 1922. The court said:

"The only error we need consider was a ruling, made during the examination of the physician who had first examined him in December, 1920. This witness said that he had taken care of the insured both at that time and after he came back from the sanatorium; and he was allowed to testify as to what he found on his several examinations, but the judge refused to let him say what the insured had told him of the 'history of the case.' It is true that the plaintiff did not make any formal offer of proof such as Rule 43(c). Rules of Civil Procedure, provides for, but, while that would have been useful, it was not an absolute condition upon availing himself of the error. Moreover, he did almost the equivalent when he said that the 'history' excluded was the 'crux of the whole case' and that if it could not be obtained from the physician, it could not be obtained at all. The first physician who had examined him was dead, and the insured's declarations as to the time of the onset of his disease and its immediate severity were quite likely to be determinative. If the testimony was competent, its exclusion probably affected 'the substantial rights of the parties.' "

The court held that the decisions as to whether such statements were or were not admissible were not entirely in accord, and after discussing the decisions the court stated that there is authority that where declarations were made by a veteran to physicians of the Veterans' Adminstration it is obviously different from declarations of fact irrelevant to the declarant's treatment, such as what was the cause of his injury. The court added:

"It is true that this body of authority is not impressive as such, but it appears to us that if there

is to be any consistency in doctrine, either declarations of all symptoms, present or past, should be competent, or only those which fall within the exception for spontaneous utterances. Nobody would choose the second, particularly as the substance of the declarations can usually be got before the jury as parts of the basis on which the physician's opinion was formed. It is indeed always possible that a patient may not really consult his physician for treatment; the consultation may be colorable. The judge has power to prevent an abuse in such cases, and here as elsewhere, when the competency of evidence depends upon a question of fact, his conclusion is final. He must decide before admitting the declarations whether the patient was consulting the physician for treatment and for that alone. Unless he is so satisfied, he must exclude them, though it is true that if he admits them, the defendant may still argue that they are untrustworthy. They will be evidence, but in estimating their truth the jury may have to decide for themselves the very issue on which the judge himself passed before he admitted them; the competency of evidence is always independent of its weight."

The court reversed the judgment. See Ross v. Industrial Commission of Arizona, 82 Ariz 9, 307 P2d 612.

Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249, was an appeal from a decree of the Circuit Court declaring that a certain instrument was not the last will and testament of the deceased. The instrument was set aside and the probate declared to be null and void. In that case the attorney who drafted the will instructed one Sara Grate to take a wire recorder to the hospital and make a recording of the conversations with the testator prior to the execution of the will. She followed these directions and made a recording which consisted of her reading of the

will to the testator, his statements, if any, after each paragraph, together with his responses to specific questions, among others as to whether or not he wanted to sign the will. In the opinion it was stated:

"At the trial the entire spool containing the recording was tendered in evidence after an offer of proof outside the presence of the jury. No objection was made by plaintiffs' counsel as to the form of the offer of proof. The court rejected the wire recording, saying: 'My notions are that Sara Grate is not a competent witness and that the reading of the will and his responses are not competent evidence. I can't see how that can be admitted in evidence, and I will so rule on that.' Apparently the court reasoned that since Sara Grate was not a competent witness in her own behalf under section 2 of the Evidence Act, her reading of the will, and the questions and answers as recorded were therefore incompetent. We cannot agree that the recording was incompetent for that reason."

The court further said:

"Counsel for defendants outlined an offer of proof to the court out of the presence of the jury, designed to lay a proper foundation for the admission of the recording. This offer included the proposed testimony of Walls Schreffler, an expert on such devices; that of Mrs. DiDomenic, one of the nurses who witnessed the will, and Samuel Saxon, the attorney who drafted the will and whose wire recorder was used. Counsel for defendants then said they would offer the entire spool in evidence. The court then ruled the wire recording inadmissible on the basis of section 2 of the Evidence Act. In view of the court's ruling, the act of calling these witnesses before the jury, the formal marking and tendering of the spool, and its

identification was not required. Had the objection made for the first time in this court been interposed at the trial, counsel for the defense would have had an opportunity to secure the trial court's ruling thereon, and to call additional witnesses, if they were needed, to lay a proper foundation for this evidence. It is our conclusion that the wire recording was not inadmissible for the reason given by the trial court and that the question was properly preserved for review."

In the instant case the discussion between counsel in the presence of the court had something of the elements of a conversation over a tea table. It is worthy of note that the offer of proof stated that the officers would testify as to certain complaints made prior to November 25, 1956. In the majority opinion the court takes the view that in order to meet the requirement of a proper offer of proof the dates of the complaints should have been included, and that the offer was too broad and too general. However, the objection made by the counsel for defendant was merely a general one; had he indicated that the objection was made because the offer was not specific, it would have afforded an opportunity to counsel for plaintiff to amplify his offer if he could, and if he could not, there would be no question before this court. See Vol 6, Callaghan's Illinois Evidence, §§ 16.05, 16.06, 16.07, and cases therein cited.

In Chicago & E. I. R. Co. v. Wallace, 202 Ill 129, 66 NE 1096, the court stated:

"It is a well settled rule in this State, that a general objection to a question asked of a witness is not sufficient, where the defect is one that could be obviated in case a specific objection were made. In Stone v. Great Western Oil Co. 41 Ill 85, we said (p 94): 'It has been so often held by this court, that objection to evidence must be specific, that it

has become the doctrine of this court. The rule is, that the party, making the objections, must point out specifically those insisted on, and thereby put the adverse party on his guard and afford him an opportunity to obviate them.' "

In DeMarco v. McGill, 402 Ill 46, 83 NE2d 313, the court said:

"The trial court is entitled to know what specific insufficiencies exist in the introduction of evidence, and it is unfair to make objections on appeal after concealing the real objections from the lower court. (People v. McCurrie, 337 Ill 290.) The rule is that a party objecting to evidence must point out the objections specifically so as to afford the adverse party an opportunity to correct it. (Illinois Iowa Power Co. v. Rhein, 369 Ill 584.) A party who seeks to exclude a piece of evidence should be explicit and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. Forest Preserve Dist. v. Lehmann Estate, Inc. 388 Ill 416."

In Logan v. Mutual Life Ins. Co., 293 Ill 510, 127 NE 688, the court held that even in a case where an objection is made on the theory that the evidence was incompetent because no verified plea was on file setting up the defense, they should have made that specific objection when the proof was offered. The court said:

"The general rule is, that objections which are of a character to be cured or obviated by amendment must be specifically made at the trial and if not so made are waived. [Citing cases.] . . . The specific objection should have been made at the trial, and it came too late in the Appellate Court to be availed of."

It is apparent that the rule with reference to the necessity for making specific objections is a rule which has been long established and recognized in the Illinois courts. Such a rule should not be lightly disposed of.

According to the rule of law heretofore laid down, under the circumstances of this case it was not necessary for the plaintiff to make any offer of proof whatsoever; hence, we cannot say that an incomplete offer would prevent him from having a review in this court of the ruling denying his right to introduce any evidence whatsoever with reference to complaints received by the officers concerning assaults, robberies, etc., on the State-Monroe subway platform, if any there were.

In this case, as in the Belfield case, the question before the trial court was not whether the offer of proof was sufficient, but whether or not the plaintiff could introduce any evidence whatsoever. The court raised no objection to the sufficiency of the offer of proof, and in fact, it would appear that as far as both counsel were concerned, that thought was furthest from their minds. The purpose of a lawsuit, in its broadest sense, is to attempt to do substantial justice. When the interposition of technicalities on the part of reviewing courts hinders that aim, then it is a blow to our entire system of law.

In the opinion of the writer of this dissent, the judgment of the Circuit Court of Cook County should be reversed and the case remanded for a new trial.