The People of the State of Illinois, Plaintiff-Appellee,
v. William F. Schmidt, Defendant-Appellant.

Gen. No. 69–85.

Third District.

January 12, 1970.

Reno, O'Byrne & Kepley, of Champaign, for appellant.

Ronald E. Boyer, State's Attorney, of Watseka, for appellee.

ALLOY, J.

This is an appeal from a judgment of the Circuit Court of Iroquois County entered on a verdict of a jury finding defendant guilty of operating his automobile at an excessive rate of speed in violation of chapter 95½ of Ill Rev Stats, 1967 (§ 146 of the UART).

The record discloses that on November 10, 1968, a speeding citation was issued to defendant charging him with operating his motor vehicle at a rate of 80 miles per hour in violation of an alleged posted speed limit of 65 miles per hour on Interstate Route 57 two miles north of Clifton, Illinois.

The record discloses that the State offered as witnesses two State Police Officers. The first was Edward Milligan who testified that he was on duty at the time operating a so-called "catch car" in conjunction with a radar unit being operated by another State Trooper, Maurice Lanton. He testified that Trooper Lanton called out the description of a vehicle at a reported

speed of 80 miles per hour. Milligan stopped the car and issued the arrest ticket. He described the type of highway on the ticket as a two-lane rather than a four-lane highway as it actually was. Trooper Milligan observed the defendant's car less than half a mile from the time he was stopped and stated that the car was under control and he could not testify as to the speed of the car but relied solely on the report from trooper Lanton.

Trooper Lanton testified that he was operating the radar unit at the time and that the radar graph records vehicle time and speed. He stated that a tuning fork and a squad car were used to test the accuracy of the radar unit prior to its operation. He further testified that he radioed ahead to Trooper Milligan to stop a 1966 Continental automobile. He also stated that while the traffic was moderate he does not recall whether there were any other automobiles around or near defendant's automobile at that time nor does he remember in which lane the vehicle was traveling. He admitted, specifically, on cross-examination, that if two cars are traveling parallel in the same direction, it is difficult to determine which one of the cars is speeding. He stated that the radar unit is supposed to pick up the fastest vehicle. He admitted that he could not testify beyond a reasonable doubt that he could make an identification of the speeding vehicle, under such circumstances. He also admitted that he might have been doing some other things than watching the automobiles at the time.

Following such testimony, the State's Attorney rested but stated in the presence of the jury that in accordance with a certain case he was asking the court to take judicial notice of the accuracy of this method of determining automobile speed. The trial court then replied in the presence of the jury:

478

"All right. In accordance with the case of People v. Abdallah, which I believe is 82 Ap2d, either 312 or 319, the Court will take judicial notice of the fact that radar detection devices, when used to determine speed, are accurate or are reliable . . . All I'm trying to say with my judicial notice—I wish it to be limited. I'm sure Mr. Boyer and Mr. Reno will agree with that—is that the method was used here is one that has proved to be reliable. If you analyze those words I think you'll see they say quite a bit. I say no more."

The court made a further reference to the radar method being used as being reliable. Defendant objected to the court's statement but said "in light of the fact that if the Court would be so kind to qualify this applies to radar units in general." In proceeding with such explanation, the court stated: "The actual method or the devices used are reliable."

Defendant testified that the speed limit on Route 57 was, generally, 70 miles per hour, but did not admit that he was speeding in the zone referred to. Defendant's wife was a passenger in the car. She also stated that her husband had been driving more or less about 70 miles per hour south of the location, but did not specifically state what his speed was at the time under consideration.

On appeal in this Court defendant states that the trial court committed prejudicial and reversible error by telling the jury about People v. Abdallah, 82 Ill App2d 312, 226 NE2d 408, and in reading its citation and stating the holding of the case. It is defendant's contention that defendant's trial by jury was thereby jeopardized. Defendant also contends that the State did not prove the speeding charge beyond a reasonable doubt on the basis of the record.

479

The significant issue before this Court is whether the action of the trial court in stating the citation by name and discussing it in the presence of the jury was reversible error. In this connection it is notable that a basic issue which was raised in the minds of the jurors was whether Trooper Lanton was correct in observing defendant's car as the car which presumably violated the speed limit so far as shown by the radar unit and also whether the radar unit was functioning properly in view of the testimony that the tuning fork may have been dropped at some time.

 We have frequently stated that in a criminal case, regardless of its nature, a trial judge should exercise great care to avoid comments likely to lead a jury to infer that its opinion is in favor of or against the defendant (People v. Coli, 2 Ill2d 186, 189, 117 NE2d 777). As stated in People v. Smith, 63 Ill App2d 369, 211 NE2d 456, at 376:

> "We recognize that jurors are ever watchful of the attitude of the trial judge; that they may discern any disbelief or hostility on his part; and that such conduct on the part of the trial judge is apt to influence the jurors in arriving at their verdict. To the end that each person accused of a crime may receive a fair and impartial trial by a jury, the trial judge in a criminal case should refrain from conveying to the jurors, by word or deed, his opinions on ultimate factual matters, the credibility of witnesses and the weight to be given to their testimony."

We have also consistently affirmed actions of trial courts in refusing to allow defense counsel to read to the jury from opinions of the Illinois courts of review (People v. Delordo, 350 Ill 148, 161-2, 182 NE 726). In the cause before us, it is obvious that the jury could

have concluded, from the reference to the case and the statement of the court, that the question of defendant's speed at the time and place under consideration had been determined unquestionably by the mechanical device—that is, the radar unit. It is contended by the prosecution that such error was waived by the defendant in this cause for the reason that specific objection to the conduct of the trial court was not made. Under all circumstances existing in this cause, considering the method by which this particular commentary was brought before the jury, we believe that the principles announced in the case of People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295, apply. In that case the court stated (at page 400):

> "The making of an objection to questions or comments by a judge poses a practical problem for the trial lawyer. It can prove embarrassing to the lawyer, but, more importantly, assuming that most juries view most judges with some degree of respect, and accord to them knowledge of law somewhat superior to that of the attorneys practicing before the judge, the lawyer who objects to a comment or question by the judge may find himself viewed with considerable suspicion and skepticism by the very group whom he is trying to convert to his client's view of the facts, thereby perhaps irreparably damaging his client's interests.

And, as stated in People v. Finn, 17 Ill2d 614, 162 NE 2d 354, at 617:

> "It is axiomatic that ultimate decisions of fact must fairly be left to the jury, and to this end it is universally held that judges should refrain from conveying to jurors their personal opinions concerning any disputed question of fact."

We believe that in the cause before us, in view of the fact that there was no actual challenge of the radar

481

technology, the statement of the court relating to the method by which the court would take judicial notice of the reliability of the radar unit could have created the impression upon the jury that the findings of such unit were not a matter which could be challenged. In so doing, the trial judge deprived defendant of a free determination by the jury of the very fact under consideration—whether defendant was violating the speed limit at the time and place under consideration. In view of our determination of this issue, it is unnecessary for us to consider other questions raised by appellant.

We also feel that the error involved to which we have referred was so fundamental, that the record in this cause, however weak in other respects as to defendant, does not justify affirmance and that this cause should be reversed and remanded for a new trial. This cause is accordingly reversed and remanded to the Circuit Court of Iroquois County.

Reversed and remanded.

STOUDER, P. J. and RYAN, J., concur.